IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | §  Civil Case No. 4:25-cv-1528 |
| WALTER BENJAMIN BIUS, and PRAIRIE FLOWER AIR ASSET COMPANY LLC., | § |
| Defendants | § |

## COMPLAINT

The United States of America, for itself and on behalf of its agencies, the Federal Aviation Administration ("FAA") and the Department of Transportation ("DOT"), alleges as follows:

## INTRODUCTION

This action is brought by the United States of America to recover civil penalties from Defendants Walter Benjamin Bius ("Bius") and Prairie Flower Air Asset Company LLC. ("Prairie Flower") under 49 U.S.C. § 4630l(a).

## PARTIES

1. The Plaintiff, the United States of America, is a governmental entity and acts through the employees of its agencies including the FAA and the DOT.

2. Defendant, Prairie Flower Air Asset Company, is located at 130 Col Etheridge Blvd. Huntsville, TX 77342, in the Southern District of Texas.

3. Defendant, Walter Benjamin Bius, is the President and owner of Prairie Flower Air Asset Company LLC, and for purposes of this lawsuit, operates out of the Southern District of Texas.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 49 U.S.C. §§ 4630l (d)(4), 46305; and 28 U.S.C. § 1345. Under 49 U.S.C. § 46301(d)(4). United States district courts have exclusive jurisdiction to adjudicate civil penalty amounts of over $50,000 for individuals and small businesses, and over $400,000 for persons other than individuals and small business concerns. The civil penalties in this matter exceed this amount.

5. This Court has personal jurisdiction over the defendants, and venue is proper in this district under 49 U.S.C. § 46106 and 28 U.S.C. §§ 139l (b), 1395, because Prairie Flower resides in and transacted business in the Southern District of Texas. Additionally, a substantial part of the events or omissions giving rise to this claim occurred in the Southern District of Texas.

## REGULATORY BACKGROUND

6. The FAA regulates the safety of "civil aircraft in air commerce." 49 U.S.C. § 44701(a). The Act defines "air commerce" as foreign or interstate "transportation of passengers or property by aircraft for compensation," or "the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce." *See id.* §40102(a)(3), (22), (24). Under the Act, the FAA issues Federal Aviation Regulations ("FARs") governing such "air commerce." *Id.* § 44701(a)(2).

7. As defined by FAR Part 1, to "operate, with respect to an aircraft" means to "use, cause to use or authorize to use aircraft, for the purpose ... of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise)." 14 C.F.R. § 1.1.

8. A "commercial operator" under the FAR is "a person who, for compensation or hire, engages in the carriage by aircraft in air commerce of persons or property." *Id.* Commercial operations are, in turn, governed by FAR Parts 119 and 135, which provide the certification and operating requirements for commercial operators, respectively. All persons operating or intending to operate a civil aircraft as a commercial operator in air commerce are required to hold the appropriate air carrier

certificate, operating certificate or operations specifications issued by the FAA. *See* 14 C.F.R. §§ 119.5(g) ("No person may operate as a direct air carrier or as a commercial operator without, or in violation of, an appropriate certificate and appropriate operations specifications."); 119.5(k) ("No person may advertise or otherwise offer to perform an operation subject to this part unless that person is authorized by the Federal Aviation Administration to conduct that operation."); 119.33(b) (Prohibiting persons from performing any commercial passenger or cargo aircraft operation for compensation or hire, under FAR 135 unless that person "(1) [i]s a citizen of the United States; (2) [o]btains an Operating Certificate; and (3) [o]btains operations specifications that prescribe the authorizations, limitations, and procedures under which each kind of operation must be conducted.").

9. Commercial operators "engaged in intrastate common carriage of persons or property for compensation or hire in air commerce," *id.* § 119.21(a), commonly known as "charter flight" operators, are also subject to the heightened operations standard enumerated in FAR Part 135. *Id.* § 119.21(a)(5) (requiring commercial operators to conduct their "[o]n-demand operations in accordance with the applicable requirements of part 135 of this chapter and shall be issued operations specifications for those operations in accordance with those requirements").

10. Under FAR Part 135, commercial operators are required to comply with specific operating requirements concerning pilot training and certification, aircraft maintenance procedures, and heightened operational safety rules including formal FAA oversight, unscheduled FAA inspections, formal insurance requirements, aircrew drug testing, maintenance drug testing, pilot rest and flight time limits. *See generally,* 14 C.F.R. Part 135, subparts A through K (listing safety standards for Part 135 operators).

11. The requirements of FAR Part 135 apply to all persons that perform operations governed by that part, regardless of whether the operator obtained the required certificate issued pursuant to FAR Part 119. *See* 14 C.F.R. § 135.7.

## FACTS

### WALTER BENJAMIN BIUS AND PRAIRIE FLOWER AIR ASSET COMPANY ENGAGED IN COMMERCIAL OPERATIONS IN VIOLATION OF FAR PARTS 119 AND 135

12. At no time relevant to this matter did Defendants hold an air carrier certificate, operating certificate or operations' specifications issued by the FAA pursuant to FAR Part 119 that would permit them to provide services and perform operations subject to FAR Parts 119 and 135.

13. At all times referenced herein, Defendants did not hold the appropriate economic authority from the Department of Transportation to operate as a Part 135 carrier.

14. At all times referenced herein, Defendants did not have an FAA approved pilot training program.

15. Defendants advertised or offered to perform services pursuant to Part 135.

16. At all times referenced herein, Mr. Bius, directly or through Prairie Flower employee Amanda Grigsby, acted on behalf of Prairie Flower in the following manner:

   A. Directing Prairie Flower's day-to-day operations;
   B. Controlling Prairie Flower's finances; and
   C. Exercising complete control of Prairie Flower.

17. At all times referenced herein, Prairie Flower was the registered owner and exercised operational control of the following aircrafts:

   A. N77LX, a Cessna Model CE-650, s/n 650-7501; and
   B. N55LX, a Cessna Model CE-550 with s/n 550-0366;

18. At all times referenced herein, Prairie Flower was the leased and exercised operational control, for compensation or hire, of the following aircraft:

   A. N906MS, a Cessna Model CE-550 with s/n 550-0906.

19. FAA regulations allow for two types of leases: (1) "wet leases," and (2) "dry leases."

20. A wet lease "means any leasing arrangement whereby a person agrees to provide an entire aircraft and at least one crewmember." 14 C.F.R. § 110.2.

21. In a wet lease, the lessor maintains "operational control" of the flight and must be certified under 14 C.F.R. part 119 and part 135.

22. By contrast, a dry lease involves leasing an aircraft without any crew. This means that the lessee has operational control of the flight.

23. A "sham dry lease," however, (essentially a disguised wet lease) occurs when a lessee is provided with an aircraft on a lease basis, but the aircraft is actually maintained, controlled, and flown by the leasing company.

24. From 2019 to 2023, Defendants created and maintained at least seventeen (17) sham dry leases for the N77LX, N55LX, and the N906MS aircraft with several different clients.

25. Each flight taken under one of these sham dry leases was subject to, but not in compliance with FAR Parts 119 and 135, because Defendants maintained operational control of the aircrafts.

26. Defendants conducted at least two-hundred and thirty-seven (237) flights under these sham dry leases.

27. At the relevant time herein, Defendants did not obtain operations specifications appropriate to each kind of operation conducted.

28. Defendants did not have qualified personnel serving as the Director of Operations, Chief Pilot, Director of Maintenance, or any equivalent positions nor would they be eligible to hold any such position as they lacked any of the required qualifications or experiences.

29. Each of the operations Defendants offered and agreed to perform under the sham dry leases were subject to FAR Parts 119 and 135.

**DEFENDANTS' REGULATORY VIOLATIONS**

30.     By reason of the foregoing, Defendants violated the following Federal Aviation Regulations:

A.      14 C.F.R. § 119.5(g), which states that no person may operate as a direct air carrier or as a commercial operator without, or in violation of, an appropriate certificate and appropriate operations specifications.

B.      14 C.F.R. § 119.5(i), which states that no person may operate as a direct air carrier without holding appropriate economic authority from the Department of Transportation.

C.      14 C.F.R. § 119.5(k), which states that no person may advertise or otherwise offer to perform an operation subject to this part unless that person is authorized by the FAA to conduct that operation.

D.      14 CFR § 119.33 (a)(2), which states that a person may not operate as a direct air carrier unless that person obtains an air carrier certificate.

E.      14 C.F.R. § 119.69(a), which states that each certificate holder must have sufficient qualified management and technical personnel to ensure the safety of its operations. Except for a certificate holder using only one pilot in its operations, the certificate holder must have qualified personnel serving in the following or equivalent positions: (1) Director of Operations, (2) Chief Pilot, and (3) Director of Maintenance.

F.      14 C.F.R. § 135.95(a), which states that no certificate holder may use the services of any person as an airman unless the person performing those services - (1) Holds an appropriate and current airman certificate; and (2) Is qualified, under this chapter, for the operation for which the person is to be used.

G.      14 C.F.R. § 135.243(a)(1), which states that no certificate holder may use a person,

6

nor may any person serve, as pilot in command in passenger-carrying operations – Of a turbojet airplane, of an airplane having a passenger-seat configuration, excluding each crewmember seat, of 10 seats or more, or of a multiengine airplane in a commuter operation as defined in part 119 of this chapter, unless that person holds an airline transport pilot certificate with appropriate category and class ratings and, if required, an appropriate type rating for that airplane.

H. 14 C.F.R. § 135.293(a), which states that no certificate holder may use a pilot, nor may any person serve as a pilot, unless, since the beginning of the 12th calendar month before that service, that pilot has passed a written or oral text given by the Administrator or an authorized check pilot on that pilot's knowledge in the areas set forth by that section.

I. 14 C.F.R. § 135.293(b), which states that no certificate holder may use a pilot, nor may any person serve, as a pilot unless, since the beginning of the 12th calendar month before that service, that pilot has passed a competency check given by the administrator or an authorized check pilot in that class of aircraft, if single-engine other than turbojet, or that type of aircraft, if helicopter, multiengine airplane, or turbojet airplane, to determine the pilot's competence in practical skills and techniques in that aircraft or class of aircraft.

J. 14 C.F.R. § 135.297(a), which states that no certificate holder may use a pilot, nor may any person serve, as a pilot in command of an aircraft under IFR unless since the beginning of the 6th calendar month before that service that pilot has passed an instrument proficiency check under section administered by the Administrator or an authorized check pilot.

K. 14 C.F.R. § 135.299(a), which states that no certificate holder may use a pilot, nor

7

may any person serve as a pilot in command of a flight unless, since the beginning of the 12th calendar month before that service, that pilot has passed a flight check in one of the types of aircraft which that pilot is to fly.

L.   14 CFR § 135.341 (a), which states that each certificate holder, other than one who uses only one pilot in the certificate holder's operations, shall establish and maintain an approve pilot training program.

M.   14 C.F.R. § 135.343, which states that no certificate holder may use a person, nor may any person serve, as a crewmember in operations under this part unless that crewmember has completed the appropriate initial or recurrent training phase of the training program appropriate to the type of operation in which the crewmember is to serve since the beginning of the 12th calendar month before that service. This section does not apply to a certificate holder that uses only one pilot in the certificate holder's operations.

N.   49 U.S.C. § 44711(a)(4), which states that a person may not—operate as an air carrier without an air carrier operating certificate or in violation of a term of the certificate.

O.   49 U.S.C. § 44711(a)(5), which states that a person may not—operate an aircraft in air commerce in violation of a regulation prescribed or certificate issued under section 44701(a) or (b) or any of sections 44702- 44716 of this title.

P.   14 C.F.R. § 91.13(a), which states that no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

### DEMAND FOR PAYMENT OF A CIVIL PENALTY

31.   Each flight that occurred under a sham dry lease violated all the regulations listed in paragraph 30.

32.   Defendants are subject to civil penalties for each violation. 49 U.S.C. § 46301(a)(1).

33. Pursuant to 49 U.S.C. § 46301(a)(2), a separate violation occurs for each flight involving the violation.

34. There are two violations for each flight. One for lacking air carrier certification, and another for lacking requisite operation specifications.

35. Each flight also had one or two unqualified crewmember violations, which is a separate violation.

36. These penalties are adjusted for inflation. 14 C.F.R. § 13.301(c).

37. Pursuant to 49 U.S.C. § 46301(a)(1) and the inflation adjustment under 14 C.F.R. § 13.301(c), each Defendant is subject to a civil penalty not to exceed $11,584.50 for each flight prior to February 2020, $13,669 for each flight between February 2020 and January 11, 2021; $13,910 for each flight between January 12, 2021, to May 2, 2021; and $14,074 for each flight after May 3, 2021.

38. Each Defendant also separately committed an additional violation, for each flight, pursuant to § 91.13(a).

39. Each Defendant is also subject to one violation of $14,074, for violating 14 C.F.R. §135.341, failure to establish and maintain an approved pilot training program.

40. On April 29, 2024, an informal conference was held between the U.S. Attorney's Office, the FAA, the DOT, and Defendants wherein the United States presented the evidence, and Defendants declines to engage in settlement negotiations.

## COUNT 1

### (CLAIM FOR ASSESMENT OF A CIVIL PENALITY)

41. The United States incorporates and re-alleges herein every allegation set forth in paragraphs 1 through 40.

42. Defendants jointly and severally owe the United States a civil penalty pursuant to the regulations laid out in paragraphs 1 through 40.

43. Through this action, the United States demands payment from Defendants in a civil penalty amount to be determined by the Court.

## JURY DEMAND

44. The United States demands a trial by jury on all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands judgment jointly and severally against Defendants Walter Benjamin Bius and Prairie Flower Air Asset Company LLC in the sum to be determined by the Court, together with costs and post judgment interest from the date of entry of judgment. The United States further requests any other relief as the Court deems just and proper.

Respectfully Submitted,

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By: /s/ *Ariel N. Wiley*
 Ariel N. Wiley
 Assistant United States Attorney
 Texas Bar No. 24093366
 Federal ID No. 2554283
 1000 Louisiana, Suite 2300
 Houston, Texas 77002
 Telephone: (713) 567-9000
 Facsimile: (713) 718-3303
 Email: ariel.wiley@usdoj.gov

 ATTORNEYS FOR
 THE UNITED STATES